In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00038-CV


______________________________




SHIRLEY JENKINS, Appellant



V.



FLORENCE B. SIMS, Appellee




 


On Appeal from the 123rd Judicial District Court


Panola County, Texas


Trial Court No. 2005-292




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Florence B. Sims sued Shirley Jenkins for trespass to try title concerning a one-acre tract of
land on which a mobile home was located in Panola County. (1) For several years preceding the appeal,
Jenkins had occupied the home and land owned by Sims. According to Sims' original petition, the
parties entered an oral contract whereby Sims would sell Jenkins the land and mobile home. Sims
alleges that Jenkins paid neither her obligation under the oral contract nor an appropriate rental value
for the property (in lieu of fulfilling the alleged contractual obligations) and that Jenkins was illegally
possessing the property. The trial court rendered judgment in Sims' favor. (2) Jenkins appeals. We
affirm.

I. Sims' Trial Testimony

 Sims testified that she purchased twelve acres of land from Stan and Melinda Craven in 2000,
that the land was located in Panola County, and that a mobile home (owned by Sims) is located on
one acre among her twelve acres. Sims further testified she has not sold or deeded this particular one
acre (or any of the remaining eleven acres) to anyone else since she purchased the entirety in 2000. 
Sims stated she had purchased the acreage and home with the intent that Jenkins would subsequently
buy the mobile home and one acre of the land. 

 Continuing, Sims testified she and Jenkins had a verbal agreement for Sims to sell the mobile
home for $7,500.00 and a one-acre parcel for $7,500.00, with Jenkins being obligated to pay Sims
$300.00 each month until the combined debt had been paid. According to Sims, a condition
precedent for entering into a contract for the sale of the land was that Jenkins pay someone to survey
the property. According to Sims, the two also agreed Jenkins would be responsible for obtaining the
necessary legal paperwork to effect the real estate transfer. Jenkins never hired anyone to survey the
land or to prepare a transfer deed. 

 Sims admitted Jenkins had made payments totaling more than $7,500.00 for the home and
the land, though many of the payments were either late or less than the $300.00 monthly payment
required by their oral agreement. The oral purchase agreement about which Sims testified was never
reduced to writing by the parties, nor did Sims execute a deed transferring either the mobile home
or the one acre to Jenkins. 

 The last payment Sims received from Jenkins occurred approximately three years before the
trial court conducted the December 7 final hearing. Jenkins continues to live on the property, though
she has made no further payments to Sims. 

II. Jenkins' Trial Testimony

 According to Jenkins' testimony, Sims promised to let Jenkins pay $500.00 down for the
land, pay $500.00 down for the mobile home, and thereafter pay monthly increments until the full
$7,500.00 purchase price for both was satisfied. (3) When Jenkins made her initial down payment, she
asked Sims about having a written contract. Sims reportedly promised Jenkins that the land would
be surveyed and that the costs associated with that survey would be deducted from Jenkins' initial
down payment. Nevertheless, the land was not surveyed. Nor did Sims provide Jenkins with a deed
for either the land or the home. During her testimony, Jenkins produced a series of thirty-four
receipts, each signed by Sims, in support of Jenkins' claim that the two parties had agreed to the sell
and purchase of both the home and the land. 

III. The Trial Court's Ruling

 After reviewing all the documentary evidence and the conflicting testimony regarding the
terms of the oral contract, the trial court ruled in Sims' favor. The trial court's written findings of fact
and conclusions of law include findings that (1) Sims is the owner of both the disputed land and the
mobile home, and (2) she should have judgment for title and possession of both. The trial court gave
Jenkins ninety days to vacate the premises. (4) 

IV. Resolution of Jenkins' Appellate Issues

 A. The Mobile Home

 In what we have designated as her first issue, Jenkins challenges the legal sufficiency of the
trial court's conclusion that the mobile home should be characterized as real property. (5) Jenkins
asserts that the evidence adduced at trial establishes that the mobile home is "personal" property
rather than "real" property. If the mobile home can be properly characterized as "real" property, then
its sale from Sims to Jenkins required a contract that satisfied the statute of frauds. If the home is
properly characterized as "personal" property, then Jenkins may not need to bring forth a document
satisfying the statute of frauds in order to establish her right to ownership. (6)

 The trial court did not enter a written finding of fact or conclusion of law regarding the
characterization of the mobile home as either real or personal property. Jenkins did not object to this
alleged failure, she did not file any other objections to the trial court's written findings and
conclusions, and she did not file a written request for additional findings and conclusions. See Tex.
R. Civ. P. 296 (requests for findings of fact and conclusions of law), 297 (party making timely
request for findings and conclusions shall give trial court notice of past due findings if not otherwise
filed by court within specified time frame), 298 (party may request specified additional findings or
conclusions). By failing to object to the trial court's findings of fact and conclusions of law, or (more
specifically) by failing to request of the court a determination of the characterization of the mobile
home as real or personal property, Jenkins has waived this issue for appellate review. Cf. Alma Invs.,
Inc. v. Bahia Mar Co-Owners Ass'n, 999 S.W.2d 820, 822 (Tex. App.--Corpus Christi 1999, pet.
denied) (if findings of trial court do not include defense asserted, failure to request additional
findings pertaining to it operates as waiver of issue); Briargrove Park Prop. Owners, Inc. v. Riner,
867 S.W.2d 58, 62 (Tex. App.--Texarkana 1993, writ denied) (failure to request additional findings
of fact and conclusions of law waived any complaint as to adequacy or completeness of findings);
Pinnacle Homes, Inc. v. R.C.L. Offshore Eng'g Co., 640 S.W.2d 629, 630 (Tex. App.--Houston
[14th Dist.] 1982, writ ref'd n.r.e.) (failure to request additional findings regarding whether note was
usurious waives issue). (7) 

 We overrule Jenkins' first point of error.

 B. The Land

 In her second point of error, Jenkins contends the trial court erred by holding that Sims
owned and was entitled to possession of the one acre of land on which the mobile home sat. Jenkins
contends that, even though there is no deed of sale for the land, the series of receipts she produced
at trial are sufficient to satisfy the statute of frauds requirement that there be a writing to
commemorate the parties' oral agreement regarding the land. 

 1. The State of Frauds Problem

 The Texas statute of frauds requires that a promise, agreement, or contract for the sale of real
property be in writing and signed by the person to be charged. Tex. Bus. & Com. Code Ann.
§ 26.01 (Vernon Supp. 2006). The "person to be charged" in this case would be Sims, the alleged
seller of the disputed one acre. "The primary purpose of the Statute of Frauds is of course to prevent
fraud and perjury in certain types of transactions requiring the agreement of the parties to be
evidenced by a writing signed by them." Davis v. Crockett, 398 S.W.2d 302, 305 (Tex. Civ.
App.--Dallas 1965, no writ). "To satisfy the Statute of Frauds, 'there must be a written
memorandum which is complete within itself in every material detail and which contains all of the
essential elements of the agreement so that the contract can be ascertained from the writing without
resorting to oral testimony.'" Frost Nat'l Bank v. Burge, 29 S.W.3d 580, 594 (Tex. App.--Houston
[14th Dist.] 2000, no pet.) (quoting Dobson v. Metro Label Corp., 786 S.W.2d 63, 65 (Tex.
App.--Dallas 1990, no writ)). The general rule is that a contract for the sale of real property that is
not in writing cannot be enforced. A memorandum that merely alludes to a contract, but which does
not provide sufficient details of that contract's essential elements, will not satisfy the statute of
frauds. Overton v. Bengel, 139 S.W.3d 754, 758 (Tex. App.--Texarkana 2004, no pet.) (citing EP
Operating Co. v. MJC Energy Co., 883 S.W.2d 263, 267 (Tex. App.--Corpus Christi 1994, writ
denied)). 

 In the case now on appeal, Jenkins offered several receipts into evidence at trial; she now
contends these receipts satisfy the statute of frauds. The receipts are, however, deficient in several
respects for purposes of satisfying the statute of frauds. 

 First, none describes the land at issue with any degree of specificity. The best description
says only "land on Co Rd 339." Our law requires contracts that provide more than a mere generic
description. Jones v. Kelley, 614 S.W.2d 95, 99 (Tex. 1981); Elizondo v. Gomez, 957 S.W.2d 862,
863-64 (Tex. App.--San Antonio 1997, writ denied); see Crowder v. Tri-C Res., Inc., 821 S.W.2d
393, 396 (Tex. App.--Houston [1st Dist.] 1991, no writ) (description of land most essential
component of memorandum of land transfer); Boddy v. Gray, 497 S.W.2d 600, 603 (Tex. Civ.
App.--Amarillo 1973, writ ref'd n.r.e.) (written contract for sale of realty void if it fails to describe
land with reasonable certainty). Parol evidence may be used to explain or clarify the agreement, but
such evidence may not be used to provide the essential terms of the contract. Tex. Builders v. Keller,
928 S.W.2d 479, 481 (Tex. 1996).

 Ideally, there would be a metes and bounds description of the disputed one acre. Less precise
descriptions have been acceptable so long as within that description there is an indication that the
property being described is a unique tract of land that can be readily identified based on the
description. See, e.g., id. Such cannot be the case here; the writing at issue did not attempt to
differentiate Jenkins' claimed one acre from any other property located along County Road 339. Nor
does the record before us evidence a specific delineation of Jenkins' claimed one-acre tract from the
larger twelve-acre whole owned by Sims. As such, we cannot say any of Jenkins' exhibits remotely
suggest the legally adequate description required to satisfy the statute of frauds.

 Second, the aggregate of Jenkins' receipts fails to establish the terms of Jenkins' payment
obligations. Such is one factor that is necessary proof when trying to satisfy the statute of frauds. 
See, e.g., CRSS, Inc. v. Runion, 992 S.W.2d 1, 7 (Tex. App.--Houston [1st Dist.] 1995, no writ)
(complete agreement on terms and wording of written contract required to permit application of
promissory estoppel to statute of frauds defense). Without having a written description of the
duration of the time during which Jenkins was expected to pay $300.00 per month, the oral contract
seems to be indefinite.

 Third, Jenkins' receipts make no specific reference to any other document that might give a
more detailed description of the land Jenkins now claims. Cf. Boddy, 497 S.W.2d at 603 (original
writing made no reference to other writings from which property at issue could be identified with
particularity). And, fourth, Jenkins offered no other documents as parol evidence to explain what
the parties meant when they noted "land on Co Rd 339" on the receipt. See Keller, 928 S.W.2d at
481.

 On a whole, we cannot say the record before us demonstrates proof of a writing or series of
writings from which the trial court would have been required to conclude that Jenkins held an
enforceable contract to purchase a specifically identified tract of land. Therefore, we cannot say the
trial court erred by holding the documentary evidence was insufficient to establish a contract for the
sale of the disputed one acre of land.

 That, however, does not end our inquiry.

 2. Exceptions to the Statute of Frauds

 Generally, whether the circumstances of a particular case fall within an exception to the
statute of frauds is a question of fact. Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 705 (Tex.
App.--Houston [1st Dist.] 1988, writ denied). 

 "Partial performance" is an exception to the ability to assert the statute of frauds as a defense
to an oral contract. If there is evidence of partial performance in accordance with the alleged
contract by the party to be charged, then principles of equity may prohibit that party from being
allowed to assert the statute of frauds as a defense to the claimed agreement. Wiley v. Bertelsen, 770
S.W.2d 878, 881-82 (Tex. App.--Texarkana 1989, no writ); see also Oak Cliff Realty Corp. v.
Mauzy, 354 S.W.2d 693, 695 (Tex. Civ. App.--Fort Worth 1962, writ ref'd n.r.e.) (discussing Reeves
Furniture Co. v. Simms, 59 S.W.2d 262 (Tex. Civ. App.--Texarkana 1933, writ dism'd)). "Under
the partial performance exception to the statute of frauds, contracts that have been partly performed,
but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of
enforcement would amount to a virtual fraud." Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 439
(Tex. App.--Dallas 2002, pet. denied). The fraud comes about "when there is strong evidence
establishing the existence of an agreement and its terms, the party acting in reliance on the contract
has suffered a substantial detriment for which he has no adequate remedy, and the other party, if
permitted to plead the statute, would reap an unearned benefit." Id. But partial performance is an
affirmative defense. See id. Therefore, in this case, it would have been Jenkins' obligation to bring
forth evidence in support of such a claim.

 To satisfy the partial performance exception to the statute of frauds, the party with the burden
of proof must establish several elements: (1) payment of consideration by the party in either money
or services; (2) possession of the property by the party; and (3) permanent and valuable
improvements to the property by the party, or, the presence of such facts as would make the
transaction a fraud on the vendee/lessee if not enforced. Swinehart v. Stubbeman, McRae, Sealy,
Laughlin & Browder, Inc., 48 S.W.3d 865, 882-83 (Tex. App.--Houston [14th Dist.] 2001, pet.
denied); In re Marriage of Parker, 997 S.W.2d 833, 837 (Tex. App.--Texarkana 1999, pet. denied)
(citing Boyert v. Tauber, 834 S.W.2d 60, 63 (Tex. 1992), citing Cowden v. Bell, 157 Tex. 44, 300
S.W.2d 286, 289-90 (1957); Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116 (1921)). 
Demonstrative evidence of these three steps may be deemed sufficient to satisfy the exception to the
statute of frauds "because they provide affirmative corroboration of the agreement by both parties
to the agreement." Id. (citing Boyert, 834 S.W.2d at 63, citing Francis v. Thomas, 129 Tex. 579, 106
S.W.2d 257, 260 (1937); Hooks, 229 S.W. at 1117). (8)

 Jenkins clearly proved she paid substantial consideration to Sims: $8,325.00 during a six-year period from March 2000 until trial in December 2006. Both parties agreed Jenkins had taken
possession of one acre of Sims' land. But Jenkins brought forth no evidence that she made
"permanent and valuable improvements to the property" as required under the third factor for proving
partial performance in light of a statute of frauds defense. Thus, for her partial performance claim
to succeed, the trial court had to find the presence of such facts as would make the transaction a fraud
on the vendee/lessee if the statute of frauds defense were otherwise allowed to prevail.

 In this case, the trial court orally announced that it did not believe that the facts of this case
rose to the level of showing fraud by Sims. The trial court noted that, when it averaged Jenkins'
$8,325.00 in payments over the six-year period of her occupancy, that average came out to $115.00
per month. This amount, the trial court concluded, was a "bargain" for rent. The trial court had
sufficient evidence to conclude that Sims did not produce evidence of fraudulent conduct by Jenkins. 

V. Conclusion

 For the reasons stated, we affirm the trial court's judgment.

 



 Jack Carter

 Justice


Date Submitted: July 17, 2007

Date Decided: September 14, 2007
1. Sims also sued Donald Ray Holt in this case. Holt was served, but did not appear at trial and
has not appealed the trial court's judgment. 
2. The trial court conducted a final hearing in this case December 7, 2006. Sims appeared with
her counsel; Jenkins appeared pro se. 
3. Jenkins also paid Sims $600.00 to have the mobile home moved onto the disputed property. 
Part of Jenkins' mortgage payment was meant to reimburse Sims for that additional cost. 
4. At the conclusion of the hearing, the trial court also made several oral pronouncements that
were consistent with its later-entered written findings of fact and conclusions of law. The trial court
stated that all the money Jenkins had paid to Sims should be considered as rental payments, which
meant Jenkins was not entitled to a refund of any money. 
5. Jenkins' appellate brief raises two issues that are, at best, far from a model of clarity. For
example, the first issue raised appears to challenge the legal sufficiency of the evidence to support
the trial court's judgment. Yet, the brief does not attempt to set forth the proper standard of review
for such an issue. And in providing analysis on the issue raised, Jenkins appears to provide a factual
sufficiency analysis. Then, to further complicate matters, she asks for this case to be remanded to
the trial court for a determination of whether the mobile home is real or personal property. Thus,
it would appear she has raised three separate and distinct issues within a single point of error, even
though none of these issues have been clearly briefed or analyzed. A similar deficiency appears in
the briefing portion for Jenkins' second point of error. 

 A party's brief "must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Given these
deficiencies, we could conclude Jenkins has inadequately briefed these issues. See, e.g., El Paso
Natural Gas Co. v. Strayhorn, 208 S.W.3d 676, 681 n.7 (Tex. App.--Texarkana 2006, no pet.). 
However, in this case, insofar as we can fairly do so, we will address what we have discerned to be
the main two issues raised in Jenkins' brief. To the extent that any additional issues have been
raised, we overrule those issues as both multifarious, see In re Guardianship of Moon, 216 S.W.3d
506, 508 (Tex. App.--Texarkana 2007, no pet.), and inadequately briefed, see Strayhorn, 208
S.W.3d at 681 n.7.

 Our leniency in substantively addressing any issues in this case should not be interpreted as
future permission to submit briefs that raise multifarious points of error, because our law grants us
discretion to summarily overrule the entirety of any multifarious or inadequately briefed points of
error. See, e.g., Foster v. State, 101 S.W.3d 490, 499 (Tex. App.--Houston [1st Dist.] 2002, no pet.)
(three separate issues combined into single point of error ruled inadequately briefed and
multifarious); H.B. Zachry Co. v. Ceco Steel Prods. Corp., 404 S.W.2d 113, 133 (Tex. Civ.
App.--Eastland 1966, writ ref'd n.r.e.) (overruling four separate issues as duplicitous and
multifarious).
6. Neither party raised at trial or on appeal whether a writing was required even if the mobile
home was classified as personal property. See Tex. Bus. & Com. Code Ann. § 2.201 (Vernon 1994)
(writing is required for a sale of goods for the price of $500.00 or more). 
7. Additionally, we note the record is not clear whether the trial court characterized the mobile
home as "personal" or as "real" property. But in finding Sims was the owner, the court labeled the
properties at issues as both "real and personal property" under a single grouping, a characterization
which appears in the trial court's findings. 
8. We note that the possible application of Section 5.072(a) of the Texas Property Code (which
prohibits oral contracts for sale of land) to the doctrine of promissory estoppel was not at issue in
this case. See Tex. Prop. Code Ann. § 5.072(a) (Vernon 2004).